UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DONOVAN GILLIAM,                                    CIVIL NO. 07-1369 (DSD/JSM)

    Petitioner,

v.                                                  REPORT AND RECOMMENDATION

U.S. PAROLE COMMISSION,

    Respondent.

JANIE S. MAYERON, United States Magistrate Judge

    This matter is before the undersigned Magistrate Judge of the District Court on the Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] and Petitioner's Motion for Summary Judgment in Reply to Respondent's Response Pursuant to Rule 56(c) of the FRCivP [Docket No. 8]. Petitioner claims that the United States Parole Commission ("Commission") erred in ordering him to serve 48 months for violating his conditions of parole, which is an upward departure from the parole guideline range of 12 to 16 months. Petitioner also filed an Amendment to Writ of Habeas Corpus Pursuant to Rule 15(a)(1) of the FRCivP [Docket No. 7] contending that the Commission's upward departure is in conflict with the United States Sentencing Guidelines. Respondent has filed a Response to Petitioner's Habeas Petition pursuant to 28 U.S.C. § 2241 [Docket No. 6], asserting that the Commission had "good cause" under 18 U.S.C. § 4206(c) to make an upward departure from the parole guideline range and arguing that the sentencing guidelines do not apply to Petitioner, as his underlying offense occurred prior to 1987.

    The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court

1

recommends that Petitioner's Motion for Summary Judgment in Reply to Respondent's Response Pursuant to Rule 56(c) of the FRCivP [Docket No. 8] be **DENIED** and that this action be **DISMISSED** with prejudice.

I.   **BACKGROUND**

The petitioner, Donovan Gilliam ("Gilliam"), was sentenced by an Army Court Martial on November 22, 1971 to 45 years imprisonment for conspiracy to commit assault, and premeditated murder. See Govt. Ex. 1 (Sentence Monitoring Computation Data).

The Commission first paroled Gilliam effective August 28, 1986.[1] See Government Ex. 4. While out on parole, he made threatening remarks at a school and refused to take his medication. Gilliam refused to attend his revocation hearing and his parole was revoked on July 26, 1988, however, was continued to take into account the fact that he had threatened corrections officers and assaulted a corrections officer. On October 17, 1988, the Commission ordered that Gilliam serve 36 months for his parole violation.

Gilliam was reparoled and released again effective November 4, 1992. During his second parole, he told his probation officer that if he did not go back to prison, he was going to do something terrible and he was convicted of battery against his stepdaughter while on parole. Nevertheless, he was allowed to remain out on supervision. The Commission issued another warrant for Gilliam for non-compliance with his mental aftercare, as he would not allow medical staff to administer him medications. However, the Commission again reinstated his supervised release until January 12, 1996, when it issued another warrant based on Gilliam's

---

[1]   Unless otherwise stated, the information regarding Gilliam's parole history has been obtained from Government Exhibits 1 (Sentence Monitoring Computation Data) and 4 (Memorandum of Hearing Summary).

2

use of drugs and for violating his mental health aftercare requirement. On May 10, 2006, the Commission revoked Gilliam's parole and he was ordered to serve 8 months for his administrative violations.

Gilliam was released to parole supervision for the third time on September 6, 1996. The Commission issued a warrant for Gilliam related to his non-compliance with his mental aftercare, his failure to report to his probation officer and for failing to submit supervision reports. On January 21, 1998, Gilliam's parole was again revoked and he was ordered to serve 11 months with a release date of April 6, 1999. The Commission extended his parole date to April 6, 2000, due to mental health issues.

Gilliam was reparoled on April 6, 2000. The Commission issued a warrant on July 17, 2002 for Gilliam related to his failure to comply with his mental health aftercare condition and for failure to report to his probation officer. Gilliam's parole was revoked and he was ordered to serve16 months with a release date of December 7, 2003.

The Commission most recently paroled Gilliam from his sentence on December 7, 2003. Gilliam was to remain under supervision until January 10, 2017. See Govt. Ex. 2 (Certificate of Parole). The Commission issued a warrant on February 14, 2005, charging Gilliam with violating the conditions of his parole by failing to submit supervision reports, failing to keep regularly scheduled appointments required by the special mental health aftercare condition of supervision, failing to report a change in his residence, and failing to report to his probation officer as directed. See Govt. Exs. 3 (warrant application), 4 (Hearing Summary). Petitioner was arrested on February 22, 2005, and received a parole revocation hearing on February 14, 2006. See Govt. Ex. 4 (Hearing Summary). On November 11, 2005, a mental health evaluation for Gilliam revealed that he continued to struggle with his schizophrenia,

paranoid type, and antisocial personality disorder, and that he was showing consistent improvement via medications and psychotherapy. Id.

Subsequent to Gilliam's revocation hearing, the Commission ordered that his parole be revoked, and that he receive no credit for time in the community from October 4, 2004, the last time he saw his probation officer, through February 21, 2005, the day before the February 14, 2005 warrant was executed. See Govt. Ex. 5 at p. 2 (Notice of Action). The Commission ordered that Gilliam serve 48 months, until February 22, 2009, a decision that was in excess of the parole guideline range of 12 to 16 months. Id. On March 31, 2006, the Commission provided Gilliam with the following reasons for the upward departure:

> After review of all relevant factors and information, a decision above the guidelines is warranted because you are a poorer parole risk than indicated by your Salient Factor Score . . . in that you have had your parole revoked four previous times on this sentence. Each of your prior revocations has included your failure to comply with special conditions that required your participation in mental health treatment including the taking of required medications. During this fifth period of supervision, you again stopped taking medications and absconded from supervision. Your continued inability to comply with these conditions of release make you a poorer risk to succeed than your salient factor score indicates. In addition, recent reports received from the medical center indicate that you believe that you have been cleared of all parole obligations and did not think it was necessary to fulfill the conditions of your release. The information contained in the Commission's file indicates that you will remain under supervision until on or about June 1, 2017. Your proven record of your inability to comply with mental health treatment and other conditions of release, coupled with your recent beliefs that you would no longer have parole obligations, indicate to the Commission that you remain a poorer risk to succeed under supervision.

See Govt. Ex. 5 at p. 2 (Notice of Action). The National Appeals Board affirmed the Commission's decision on administrative appeal. See Govt. Ex. 6 (Notice of Action on Appeal).

4

## II.   DISCUSSION

Gilliam brought the present Petition under 28 U.S.C. § 2241 seeking reversal or revision of the Commission's decision to sentence him to 48 months related to his most recent parole violation. Gilliam argued that the Commission's decision to make a three level upward departure from the parole guideline range of 12 to 16 months, which he would have received based on his salient score for his administrative parole violation, is not justified. See Motion for Summary Judgment in Reply to Respondent's Response Pursuant to Rule 56(c) of the FRCivP [Docket No. 8] ("Pet.'s Mem.") at p. 2. Gilliam also argued that the Commission impermissibly imposed a sentence that exceeded the applicable sentencing guidelines set forth by Congress. See Amendment to Writ of Habeas Corpus Pursuant to Rule 15(a)(1) of the FRCivP [Docket No. 7] at pp. 2-4.

The Government countered that the Commission had "good cause" under 18 U.S.C. § 4206(c) to make an upward departure from the parole guideline range, and argued that the sentencing guidelines do not apply to Petitioner, as his underlying offense occurred prior to 1971.

> 18 U.S.C. § 4206(c) provides:
>
>> The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon. (emphasis in original)
>
> "The statute provides that the Parole Commission may depart from the guideline range

'if it determines there is good cause for so doing,' and if the prisoner is furnished written notice containing a statement of reasons for the decision." Edmundson v. Turner, 954 F.2d 510, 513 (8th Cir. 1992) (quoting 18 U.S.C. § 4206(c)). A court may not substitute its judgment for that of the Commission as to what qualifies as "good cause" for departing from the guidelines. See Hackett v. U.S. Parole Comm'n, 851 F.2d 127, 131 (6th Cir. 1987) (citation omitted). Congress has, however, cautioned that good cause for departure "means substantial reason and includes only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious." H.R. Conf. Rep. No. 94-838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S.Code Cong. & Admin. News at 359, 1976 WL 13835 at *27. As such, this Court's review of the Commission's decision is limited to whether it had a rational basis for the upward departure embodied in the statement of reasons, and this Court will not disturb the Commission's ruling unless the factors cited by the Commission for the departure were so "arbitrary, irrational, unreasonable, irrelevant or capricious" that they failed to constitute good cause. See Kimberlin v. White, 7 F.3d 527, 533 (6th Cir. 1993) (concluding that for the sufficiency the Commission's justification of an upward departure, "the district court correctly held that it did not have authority to review the substantive parole decision of the Commission, and therefore could only review whether the factors cited by the Commission were so 'arbitrary, irrational, unreasonable, irrelevant or capricious' that they failed to constitute good cause.") (internal and external citations omitted); Thomas v. Brennan, 961 F.2d 612, 619 (7th Cir. 1992) ("Our review of the Commission's decision to depart and the extent of the departure is 'extremely narrow and limited to determining whether the Commission acted arbitrarily or capriciously' or abused its discretion.") (quoting Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986)); Misasi v. United States Parole Comm'n, 835 F.2d

6

754, 758 (10th Cir. 1987) (finding that the Commission's decision to set a release date outside the guidelines under this provision will be affirmed if "'there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.'") (quoting Solomon v. Elsea, 676 F.2d 282, 290 (7th Cir. 1982)); Walker v. United States, 816 F.2d 1313, 1316 (9th Cir. 1987) ("[A] court may consider whether the Commission failed to show 'good cause' for doing so, but may only inquire whether that showing was arbitrary, irrational, unreasonable, irrelevant, or capricious."); Maddox v. U.S. Parole Commission, 821 F.2d 997, 1000 (5th Cir. 1987) ("good cause" includes any substantial reason which is not "arbitrary, irrational, unreasonable, irrelevant, or capricious.").

In this case, the Commission found that a decision above the guidelines was warranted because it found that Gilliam was a poorer parole risk than indicated by his Salient Score. According the Commission, Gilliam was a poorer risk to succeed under supervision due to: (1) a record of his inability to comply with mental health treatment and other conditions of release; and (2) his recent beliefs that he no longer had any parole obligations. See Govt. Ex. 5 (Notice of Action). This Court finds that the record supports the reasons set forth by the Commission.[2] Gilliam, who has consistently been diagnosed with schizophrenia, has failed to comply with his mental health aftercare requirement each of the four times he has been released on parole over an approximately 20-year period and failed to report to his probation officer three of the four times he had been released on parole, including during his most recent release. See

---

[2]  Gilliam asserted that the Commission conceded that his prior revocations were not relevant to its consideration. See Pet.'s Mem. at p. 2. This Court disagrees, considering that both the statement of reasons set forth in the Commission's brief and the Notice of Action focused on Gilliam's prior revocations, especially with regards to his failure to participate in mental treatment, as the reasons for the upward departure. See Respondent's Response to Petitioner's Habeas Petition pursuant to 28 U.S.C. § 2241 [Docket No. 6] at p. 2; Govt. Ex. 5 (Notice of Action).

Govt. Ex. 4 (Memorandum of Hearing Summary).  In addition, Gilliam stated during his November 2005 hearing that he "received two 'police clearance certificates', which indicated he had never had a felony and based on that information, did not think it necessary to fulfill the conditions of his release."  Id.

This Court concludes that given the facts of this particular case, the Commission had a rational basis to require that Gilliam serve 48 months, above his parole guideline range of 12 to 16 months.[3]  Gilliam's schizophrenia, coupled by his failure to comply with his mental health

---

[3] This Court notes that the Government referred the Court to the Commission's Procedures Manual, which provides as an example that the Commission may render a decision outside of the guidelines if "you are a poorer parole risk than indicated by your salient factor score in that you have repeatedly failed to adjust to previous periods of parole supervision."  See Govt. Ex. 7 (August 15, 2003 U.S. Parole Commission Rule & Procedures Manual, pp. 65-66 §§ 2.20-05, Example 4).  The note to Example 4 states that to apply this departure the parolee must have had "at least two prior revocations" and "nine prior commitments."  Id.  Including the latest revocation, Gilliam has had five revocations of his parole and has been committed, based on the record before the Court, a total of 6 times, once for his initial sentence and five times resulting from the subsequent parole revocations stemming from the original 1971 sentence.  To the extent that Gilliam may believe that the Commission's decision was at odds with this example, it is rejected.  First, the Manual also states that the examples, including those set forth in Example 4, are not the only situations in which decisions outside the guidelines may appropriately be considered.  Id. (U.S. Parole Commission Rule & Procedures Manual, pp. 65, ¶ A).  Indeed, the legislative history suggests that the definition of good cause "can not be a precise one, because it must be broad enough to cover many circumstances."  H.R. Conf. Rep. No. 94-838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S.Code Cong. & Admin. News at 359, 1976 WL 13835 at *27.  Second, Section 2.20(c) of the Commission's guidelines itself states in clear language that "[t]hese time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered."  28 C.F.R. § 2.20(c) (emphasis added).  As such, any failure to fit into an example set forth by the manual, in of itself, does not render a departure by the Commission arbitrary and capricious.  Third, the Commission's procedures create no enforceable rights.  See Caporale v. Gasele, 940 F.2d 305, 306-07 (8th Cir. 1991) ("[W]e have no jurisdiction to review departures from internal rules which are 'merely statements of policy, organization, procedure or practice.'") (quoting Vargas v. United States Parole Comm'n, 865 F.2d 191, 195 (9th Cir. 1988)); see also Introduction to the August 15, 2003 Manual at http://www.usdoj.gov/uspc/rules_ procedures/uspcmanual8-15-03final.pdf ("The notes, procedures, and appendices in this manual are intended only for the guidance of Parole Commission personnel and those agencies which must coordinate their work with the

treatment requirement while out on parole, his repeated failures to report to his probation officer, and his recent belief that he did not have any parole obligations, provided a sufficient basis for the Commission to conclude that a parole release in the near future would only result in Gilliam again not complying with his mental health treatment requirement. As such, this Court finds that the Commission's departure was not arbitrary and capricious.

Gilliam also argued that the Commission impermissibly imposed a sentence that exceeded the applicable sentencing guidelines set forth by Congress. See Amendment to Writ of Habeas Corpus Pursuant to Rule 15(a)(1) of the FRCivP [Docket No. 7] at pp. 2-4. This argument has no merit. The United States Sentencing Guidelines are only applicable to crimes that were committed after November 1, 1987 (when the Guidelines became applicable), and therefore, are not applicable to Gilliam's parole, as he was initially convicted in 1971. See United States v. Eliason, 3 F.3d 1149, 1155 (7th Cir. 1993) ("Because the crime for which the defendant was convicted was committed before November 1, 1987, the United States Sentencing Guidelines are not applicable.") (citing United States v. Morris, 957 F.2d 1391, 1403 (7th Cir.), cert. denied, 506 U.S. 941 (1992)); U.S. ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1171 (3rd Cir. 1989) ("D'Agostino was convicted of separate counts in March and in October of 1982 of crimes committed between 1974 and 1978. Clearly the old sentencing provisions apply to him. As such, 18 U.S.C. § 4206(c), which permits the Parole Commission to deny parole within the guidelines if it determines there is good cause, applies to D'Agostino because the legislators intended that a 'sentence imposed before the effective

---

Commission. The notes, procedures, and appendices do not confer legal rights and are not intended for reliance by private persons."). Thus, "even if the Commission acted contrary to its procedures, as long as its decision had a rational basis, we would be required to deny [Gilliam's] petition." Dietz v. U.S. Parole Comm'n, No. 06-6443, 2008 WL 60287 at *3 (6th Cir. Jan. 2, 2008).

date of the guidelines as to an individual imprisoned or on probation or parole on that date would not be affected by' the Sentencing Reform Act.") (quoting 1984 U.S.Code Cong. & Admin. News at 3372); <u>Powell v. U.S. Parole Comm'n</u>, No. 05-CV-782S, 2007 WL 2283990 at *2 n. 3 (W.D.N.Y. Aug. 06, 2007) ("The statutes that created the federal parole system, 18 U.S.C. §§ 4201-4218 were repealed in 1984.  However, they remain applicable to Powell because his federal sentence was for a crime committed prior to November 1, 1987, the date the United States Sentencing Guidelines became effective.") (citations omitted).

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**;

2. Petitioner's Motion for Summary Judgment in Reply to Respondent's Response Pursuant to Rule 56(c) of the FRCivP [Docket No. 8] be **DENIED**

3. This action be **DISMISSED WITH PREJUDICE**.


Dated:   January 14, 2008

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 31, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is

therefore not appealable directly to the Circuit Court of Appeals.